**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 22 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

FAISAL F. AMANATULLAH, M.D.,

    Plaintiff-Appellant,

      v.

COLORADO BOARD OF MEDICAL
EXAMINERS, an agency of the State of
Colorado; JAMES P. BORGSTEDE, M.D.;
MEMBERS OF PANEL A OF THE
COLORADO BOARD OF MEDICAL
EXAMINERS, IRENE AGUILAR, M.D.,
ELIZABETH FEDER, PH.D., WARREN T.
JOHNSON, M.D. JANE A. KENNEDY,
D.O., G. EDWARD KIMM, JR., M.D., in
their individual and official capacities;
MEMBERS OF PANEL B OF THE
COLORADO BOARD OF MEDICAL
EXAMINERS, ROGER M. BARKIN, M.D.,
LOUIS B. KASUNIX, D.O., Vice President,
RAY ANN BRAMMER, Esq., Chair Public
Member, PAMELA L. KIMBROUGH, M.D.,
JOHN T. AMMONS, M.D., in their official
capacities only; SUSAN MILLER,
administerial employee of the Colorado
Board of Medical Examiners; SHANNEL
LORANCE, administerial employee of the
Colorado Board of Medical Examiners;
JOHN DOES 1 through 5; and JANE DOES
1 through 5; agents of the Colorado State
Board of Medical Examiners,

    Defendants-Appellees.

No. 98-1314

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 97-WM-2581)

Chris L. Ingold (Paul D. Cooper with him on the briefs), of Cooper & Clough, P.C., Denver, Colorado, for the appellant.

John S. Sackett, Assistant Attorney General, (Gale A. Norton, Attorney General, and Gregg E. Kay, First Assistant Attorney General, with him on the brief), State of Colorado, Denver, Colorado, for the appellees.

Before **TACHA**, **BARRETT**, and **BRORBY**, Circuit Judges.

**BARRETT**, Senior Circuit Judge.

Faisal F. Amanatullah, M.D., (Amanatullah) appeals the district court's Order abstaining from considering his claims on the merits and dismissing his 42 U.S.C. § 1983 civil rights complaint.

Facts

Amanatullah is a physician licensed to practice medicine in Colorado and Nevada.[1] Appellees are the Colorado Board of Medical Examiners (the Colorado Board) and various officers and employees of the Board.

In 1994, the Nevada Board of Medical Examiners (the Nevada Board) filed an administrative complaint against Amanatullah, alleging five instances of substandard patient care (Counts 1-5) and twenty-four instances of overcharging for diagnostic testing in violation of Nevada regulations

---

[1]     The court takes judicial notice of the fact that Colorado revoked Amanatullah's license to practice medicine on May 21, 1999.  Fed. R. Evid. 201.  *See United States v. Burch*, 169 F.3d 666, 671 (10th Cir. 1999) (judicial notice may be taken for the first time on appeal).

(Counts 6-29). (App. Vol. 2 at 718-66.) On April 3, 1995, Amanatullah settled the complaint with the Nevada Board. *Id*. Vol. 1 at 69-77. The Nevada Board dismissed the substandard patient care charges with prejudice and Amanatullah pled *nolo contendere* to the overcharging violations. *Id*. at 75-77. Amanatullah received a public reprimand and paid a fine, but remains in good standing with the Nevada Board. *Id*. Following the settlement, Amanatullah relocated to Colorado Springs, Colorado.

In December, 1995, the Colorado Board began an investigation into the Nevada allegations. *See id*. at 261. The Colorado Board contacted the Nevada Board and received a copy of the reprimand letter, settlement, and complaint against Amanatullah. On March 13, 1996, the Colorado Board inquiry panel sent a "30 day" letter to Amanatullah, requesting information regarding Counts 6-29, the overcharging allegations, of the Nevada complaint.[2] *Id*. at 78-79. Amanatullah responded on April 12, 1996. *Id*. at 94-97. On May 22, 1996, the inquiry panel voted to issue a second "30 day" letter to Amanatullah regarding Counts 1-5 of the Nevada complaint, the substandard care allegations. *Id*. at 264, 266-67. Amanatullah responded to the second inquiry on June 5, 1996. *Id*. at 268-71. In July, 1996, the inquiry panel reviewed Amanatullah's second response and voted to refer the case to Complaints and Investigations of the Department of Regulatory Agencies for investigation and a review by an internal medicine consultant. *Id*. at 274.

In September, 1997, after reviewing Amanatullah's response to its May 22, 1996, "30-day" letter and the report on its own investigation, the inquiry panel referred the case to the Attorney General for commencement of formal disciplinary proceedings to revoke Amanatullah's license.

---

[2]     The Colorado Board is divided into two panels, the inquiry panel, Panel A in this case, and the hearings panel, Panel B. C.R.S. § 12-36-118(1).

*Id.* at 280. Amanatullah was notified by letter of September 16, 1997. *Id.* Vol. 2 at 432.

On December 9, 1997, Amanatullah filed this § 1983 action, seeking to enjoin the Colorado Board's proceedings against his Colorado medical license and damages stemming from the Colorado Board's alleged violations of his civil rights. *Id.* Vol. 1, Tab 1 at 1-21. On July 20, 1998, the district court dismissed Amanatullah's complaint based on the court's conclusion that it must abstain under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). *Id.* Vol. 5, Tab 64 at 1450-60.

On appeal, Amanatullah contends that the district court erred in dismissing his complaint and that the Colorado Board is violating his constitutional rights. Amanatullah asserts that the district court erred in abstaining pursuant to *Younger* because: (1) substantial proceedings on the merits took place in federal court before any state proceedings, (2) the state proceedings cannot address his federal claims raised in his complaint, and (3) dismissal of his damages claim was improper.[3] On the merits, Amanatullah argues that the Colorado Board is violating his rights by denying full faith and credit to the Nevada Board's order, and by exceeding its limited authority under its enabling statute.[4] Amanatullah asserts that the district court should have enjoined the clear violations of his rights. We review *de novo* the district court's decision to abstain pursuant to *Younger*. *Taylor v.*

---

[3] It is curious that Amanatullah is concerned with the dismissal of his damages claims inasmuch as he informed the court at the hearing on his motion for a preliminary injunction on February 24, 1998, that "it is clear . . . that if the Board of Medical Examiners does violate his constitutional rights, they're not subject to a damages suit, . . .." (App. Vol. 5 at 1710.) *See* C.R.S. § 12-36-103(5) (board members "immune from any civil action based upon a disciplinary proceeding"); *Horowitz v. State Board of Medical Examiners of Colo.*, 822 F.2d 1508 (10th Cir.), *cert. denied*, 484 U.S. 964 (1987) (board members absolutely immune from damages under § 1983).

[4] Based on our conclusion *infra* that we must abstain pursuant to *Younger*, we will not address Amanatullah's claims on the merits. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir.) (we will not "undertake to decide issues that do not affect the outcome of a dispute") (citation omitted), *cert. denied*, 502 U.S. 878 (1991).

*Jaquez*, 126 F.3d 1294, 1296 (10th Cir. 1997), *cert. denied*, 118 S.Ct. 1187 (1998).

Discussion

"*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief-such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings-when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Taylor*, 126 F.3d at 1297. *Younger* abstention is non-discretionary; it must be invoked once the three conditions are met, absent extraordinary circumstances. *See Seneca-Cayuga Tribe of Okla. v. State of Oklahoma ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir.1989). We will now address each of these conditions in turn.

First, the Colorado Board initiated state proceedings against Amanatullah substantially before Amanatullah filed his federal complaint. The state proceedings in this case are governed by the Colorado Medical Practice Act, C.R.S. §§ 12-36-101 *et seq.*, and the Colorado Administrative Procedure Act, C.R.S. §§ 24-4-101 *et seq.* The disciplinary proceedings by the Colorado Board begin with an informal inquiry and investigation into complaints. C.R.S. § 12-36-118(4). If upon completion of the investigation, the inquiry panel finds that the facts "warrant *further* proceedings by formal complaint," the matter is referred to the attorney general for the preparation and filing of a formal complaint. C.R.S. § 12-36-118(4)(c)(IV) (emphasis added). The formal complaint is heard

by an administrative law judge at a formal hearing pursuant to § 12-36-118(5) and § 24-4-105. The administrative law judge's decision is reviewed by the Colorado Board's hearing panel and the final agency action is then subject to judicial review. *See* C.R.S. § 24-4-106 and § 12-36-119.

We hold that state proceedings began on March 13, 1996, when the Colorado Board issued its first "30-day" letter to Amanatullah advising him of its investigation into the allegations of the Nevada complaint. The state proceedings did not begin when the formal complaint was filed by the attorney general, as contended by Amanatullah. The Colorado Revised Statutes § 12-36-118(4)(a)(I) provides, *inter alia*, "The physician complained of shall be given notice by certified mail of the nature of the complaint and shall be given thirty days to answer or explain in writing the matters described in such complaint." The proceedings continued with: Amanatullah's response on April 12, 1996; a second "30-day" letter on May 22, 1996, regarding Counts 1-5 of the Nevada complaint; Amanatullah's second response on June 5, 1996; the inquiry panel's review and referral for an investigation in July, 1996; and the inquiry panel's review and referral of the matter to the attorney general's office for the filing of a formal complaint in September, 1997. Contrary to Amanatullah's contentions, substantial state proceedings took place before he filed his federal complaint on December 9, 1997. The formal proceedings may have been initiated sooner had Amanatullah not sought delays in the filing of the formal complaint by threatening a temporary restraining order in federal court. *See* Vol. 2 at 408-426.

Second, the state provides an adequate forum to hear Amanatullah's constitutional and civil rights claims raised in his federal complaint. The Colorado Administrative Procedure Act provides that "[i]n order to assure that all parties to any agency adjudicatory proceeding are accorded due process of law," the administrative law judge has the authority "to dispose of motions to dismiss for

lack of agency jurisdiction over the subject matter or parties or for *any other ground.*" C.R.S. § 24-4-105(1) and (4) (emphasis added). *See e.g. Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435-37 (1982) (the Supreme Court held that federal courts should not interfere with pending attorney disciplinary actions if state procedures allow an attorney the opportunity to raise constitutional challenges to the proceedings). Furthermore, the final agency action shall be subject to judicial review. *See* C.R.S. § 12-36-119 (appeal of final board actions to court of appeals); C.R.S. § 24-4-106(11) (judicial review by court of appeals). It is sufficient for purposes of *Younger* abstention that federal challenges, such as Amanatullah's civil rights complaints, may be raised in state court judicial review of administrative proceedings. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch, Inc.*, 477 U.S. 619, 629 (1986) ("[I]t is sufficient under *Middlesex*, *supra*, at 436, that constitutional claims may be raised in state-court judicial review of the administrative proceeding.").

At the time that the district court abstained and dismissed Amanatullah's federal complaint, there had been no hearing before an administrative law judge. We consider Amanatullah's claims as of the that time. Amanatullah would have had ample opportunity to present his constitutional and civil rights claims to the administrative law judge at the hearing. We assume that the administrative law judge would have followed his/her obligations under § 24-4-105 and considered Amanatullah's federal claims. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."). Amanatullah also has the opportunity to raise his federal claims in the judicial review process. *See* C.R.S. § 24-4-106(11). "If [the court of appeals] finds that the agency action is . . . contrary to constitutional right, power, privilege, or immunity, . . . or otherwise contrary

- 7 -

to law . . . the court shall hold unlawful and set aside the agency action . . ..” C.R.S. § 24-4-106(7).

Third, there is no question that the licensing and discipline of physicians involves important state interests, matters which traditionally look to state law for their resolution, or implicate separately articulated state policies. As the district court observed, it is difficult to imagine a state interest more important than the protection of its citizens against the harms of unauthorized, unqualified, and improper practice of medicine. (App. Vol. 5, Tab 64 at 1457.) *See* C.R.S. § 12-36-102(1).

Amanatullah argues that *Younger* abstention is not appropriate because the district court erred in failing to consider his amended complaint, which demonstrated the bad faith of the Colorado Board and its agents in pursuing his license. The *Younger* abstention doctrine does not apply “in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown.” *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). *See Younger*, 401 U.S. at 54 (creating exception on “showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief.”); *Phelps v. Hamilton*, 59 F.3d 1058, 1066-68 (10th Cir. 1995) (analyzing exceptions). “[I]t is the plaintiffs ‘heavy burden’ to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment.” *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (quoting *Phelps*, 59 F.3d at 1066). Amanatullah has not met this burden. On the record before us, there is no evidence that any of these exception apply to this case. The district court did not abuse its discretion in failing to consider Amanatullah’s

amended complaint.[5]

Therefore, we hold that the district court properly abstained from considering Amanatullah's

claims on the merits. The district court properly abstained under *Younger*.

**AFFIRMED**.

---

[5]     This is especially true in view of the late filing of the amended complaint. It was
not tendered to the court until July 7, 1998. (App. Vol. 5 at 1740.)