**Robert Edward FORCHION, Plaintiff,**

v.

**INTENSIVE SUPERVISED PAROLE, et al., Defendants.**

**Civil Action No. 02–4331 (JEI).**

United States District Court, D. New Jersey.

Jan. 24, 2003.

John Vincent Saykanic, Esq., Clifton, NJ, for Plaintiff.

American Civil Liberties Union of New Jersey Foundation by Edward L. Barocas, Esq., Newark, NJ, Amicus Curiae for Plaintiff.

David Samson, Attorney General of New Jersey by Christopher C. Josephson, Deputy Attorney General, Trenton, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

Presently before the Court is Plaintiff's request for a preliminary injunction reinstating him to the Intensive Supervision Program ("ISP") pending the outcome of this matter. The request for a preliminary injunction will be granted by the Court.

### I.

Plaintiff Robert Edward Forchion is currently incarcerated at the Burlington County Jail after originally pleading guilty, on September 20, 2000, to conspiracy to possess with intent to distribute marijua-na. Plaintiff was sentenced to a ten year flat sentence and was released into the ISP program on April 3, 2002.

ISP is a court administered program originally designed by the Administrative Office of the Courts ("AOC"). *State v. Cannon*, 608 A.2d 341, 344, 128 N.J. 546 (1992). It is funded by the Legislature and is administered by the AOC. *Id.* at 344. Participants in the program are former inmates who are released from prison before the end of their sentences and are placed under strict supervision. *Id.* at 344. In order to be accepted into the program an inmate must be approved by the ISP Resentencing Panel, a panel made up of three appointed judges. *Id.* at 344–45. Under the program there is "[n]o further appellate review of the panel's substantive decision." N.J. Rules of Court 3:21–10(e).

On either April 8 or 9, 2002, Plaintiff was given his first warning that he was violating the terms of his ISP release. The warning, by ISP officer Warren Campbell, related to an interview and article published in The Trentonian newspaper. According to the Plaintiff, he was told not to speak to the press. However, according to his ISP violation report he was only warned that speaking to the press might give the impression that he was promoting the use of marijuana, which under the terms of his release he was not permitted to do.

On May 20, 2002, Plaintiff was again told not to speak to the press after it came to the attention of an ISP officer that he had given interviews to various Philadelphia newspapers. Plaintiff was again warned about speaking to the press on May 23, 2002.

On May 28, 2002, Plaintiff was scheduled to begin work but was told upon showing up that he could not start until a later date. Plaintiff failed to notify his ISP officer that he did not work on that day

and the officer did not become aware of the violation until it was reported in two newspapers that the Plaintiff had been protesting outside of the Burlington County Court House on that day. At this time the Plaintiff was placed under electronic surveillance and home confinement. While installing the electronic surveillance the ISP officers at Plaintiff's home demanded that he turn over to them what they claim resembled a cellular telephone but was instead a tape recorder. Plaintiff refused to turn over the tape recorder.

On June 2, 2002, Plaintiff left his home during hours in which he was restricted from doing so. When confronted on this, he claimed that he had attended an Alcoholics Anonymous meeting and had forgotten that he could not leave his home on that day. On June 5, 2002, ISP officer Thomas Bartlett was informed that Plaintiff had been handing out fliers and protesting in front of the Burlington County Courthouse regarding the legalization of marijuana and a child custody matter. On June 6, 2002, Plaintiff was arrested and incarcerated at the Burlington County Jail for violating the terms of his ISP release. In the ISP report following this arrest the officer stated that "Robert has thus far refused to comply with the panel's instructions that he not advocate the use of marijuana."

On June 10, 2002, Plaintiff was returned to the ISP program and, according to the ISP officers, proceeded to further violate the conditions of his release. Plaintiff produced, appeared in, and contracted with Comcast Communications Inc. to air a series of commercials advocating marijuana use, according to the ISP officers, or advocating the legalization of marijuana, according to the Plaintiff. The officers claim that the Plaintiff did not have permission to enter into such a contract.

The ISP officers also continued to note that the Plaintiff was talking to members of the press and either advocating marijuana use or the legalization of marijuana. In addition, the Plaintiff was directed to refrain from running and updating his website, "njweedman.com," and from soliciting funds for his political party, the Legalize Marijuana Party, through the website. Articles regarding the Plaintiff continued to appear in The Trentonian, this time regarding his television commercials.

On August 19, 2002 and on August 29, 2002, the Plaintiff refused to answer questions from ISP officers regarding the website and his commercials. Instead, Plaintiff invoked his Fifth Amendment right against self incrimination. Plaintiff also did not pay his court ordered fines. On August 19, 2002, Plaintiff was again taken into custody and removed from the ISP program.

Plaintiff's ISP violation hearing in front of the three judge panel, to determine whether he should be returned to ISP, did not commence until December 4, 2002. The hearing was not completed on that date and was continued until January 17, 2003. Again, the hearing was not completed and was continued, this time to January 29, 2003. Plaintiff originally filed two matters with this Court, one a habeas corpus petition, and the other an action under 42 U.S.C. § 1983 claiming retaliation for exercising his First Amendment rights. Following oral argument before the Court on December 31, 2002, the two actions were consolidated and the matter was transformed into a § 1983 action. The Court then issued an order to show cause why a preliminary injunction should not be issued reinstating the Plaintiff to the ISP program and oral argument was held on January 21, 2003.

## II.

The most immediate issue for this Court is whether abstention is appropriate

in these circumstances. Defendants claim that under the *Rooker–Feldman* doctrine this Court cannot review the ISP Resentencing Panel's decisions. The *Rooker–Feldman* doctrine states that "a party's recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court," *Parkview Associates Partnership v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000), and so therefore only state appellate courts or the United States Supreme Court can review the decisions of state courts for constitutional error. *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York and New Jersey Police Dep't*, 973 F.2d 169, 177 (3d Cir.1992). However, the doctrine only applies when the action taken by the state body is judicial, and not legislative, ministerial, or administrative, in nature. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 479, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (noting that an administrative action is one which involves rulemaking of some sort and does not involve the interpretation and application of existing law).

■ The *Rooker–Feldman* doctrine does not apply to this case. The ISP Resentencing Panel has final authority over the Plaintiff and there is no way of appealing its decisions. Accordingly, this Court does have the authority to review the decisions of the panel. In addition, the Panel is acting in many ways as an administrative, rather than judicial, body. It sets the conditions that the Plaintiff must follow to remain in ISP. These conditions do not come from existing law but are instead determined by the panel for each individual ISP participant. As such, review by this Court of the actions of the Panel is appropriate. Even more relevant is that this action is not a review of any decision by the ISP Panel. Plaintiff was in fact removed from ISP without any review by the Panel. Instead, this is a § 1983 action against those who removed the Plaintiff from ISP. Therefore, the *Rooker–Feldman* doctrine is also not applicable here because there has been no decision by a state court.

■ Abstention under the *Younger* doctrine is also a relevant issue in this case. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* doctrine states that federal courts cannot intervene in a matter when (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity in the state judicial proceeding to raise constitutional challenges.[1] *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Port Auth. Police Benevolent Ass'n, Inc.*, 973 F.2d at 173.

■ While there is an ongoing state proceeding taking place, the ISP Resentencing Panel, that proceeding is not judicial in nature. Simply because three judges sit on the ISP Panel does not mean

---

1. Plaintiff argues that he will suffer "irreparable injury" if he is not released into ISP and so therefore the doctrine should not apply. 401 U.S. at 43–44, 91 S.Ct. 746. However, the standard set out in *Younger* to show irreparable injury is a strict one requiring that the alleged injury be greater than those injuries incidental to normal criminal proceedings and that there must be either bad faith, police harassment, or a prosecution without any hope of prevailing, or that the relevant statute must be fragrantly unconstitutional. 401 U.S. at 46–48, 53–54, 91 S.Ct. 746. In this case there is no evidence of any bad faith or harassment on the part of the ISP officers, who believed they were enforcing valid restrictions on Plaintiff's behavior. In addition, the rules put forth by the Panel are not fragrantly unconstitutional, because there is an argument to be made that the rules did not violate Plaintiff's First Amendment rights.

the Panel itself is performing a judicial function. While many administrative proceedings are considered to be judicial in nature, that is not always the case. *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 n. 2, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (stating that abstention may not be appropriate where the administrative proceedings are expressly considered not to be "judicial in nature").

In the *Middlesex County Ethics Committee* case the Supreme Court held that the practice of reviewing ethics violations of attorneys by District Ethics Committees was a judicial function because of the clear language in New Jersey Supreme Court decisions about the role of the Committees and because of the judicial nature of the proceedings. *Id.* at 433–34, 102 S.Ct. 2515. That is not the case with regard to the ISP Resentencing Panel. The Panel in many ways acts as a parole board would and does not perform what are traditionally thought of as judicial functions. While it is true that some of its functions are judicial, others are clearly not. The program itself is run by the Administrative Office of the Courts.[2] In reality, ISP is only partly a judicial program and the ISP Resentencing Panel performs a mixture of both administrative and judicial functions. Yet the balance of its duties is closer to those of a parole board than to those of a court. While it does have the power to modify the sentences of inmates, a judicial function, in this case it is using its power in the fashion of a parole board. *See State v. Clay*, 553 A.2d 1356, 1359, 230 N.J.Super. 509 (N.J.Super.Ct.App.Div.1989).

There is no question that the proceedings before the ISP Resentencing Panel implicate important state interests. However, there is a real question over whether there is an adequate opportunity, even if the proceedings can be considered judicial in nature, for the Plaintiff to raise constitutional challenges. This is because there is no opportunity for the Plaintiff to appeal the decisions of the ISP Panel to any New Jersey court and present his constitutional arguments to such a court. Without an opportunity to appeal to a true New Jersey state court it is likely that the Plaintiff will not be afforded an adequate opportunity to raise his constitutional challenges. *See Amanatullah v. Colorado Bd. of Medical Examiners*, 187 F.3d 1160, 1164 (10th Cir.1999) (holding that there was adequate opportunity when state court judicial review of an administrative proceeding was available); *Port Auth. Police Benevolent Ass'n*, 973 F.2d at 174 (stating that the ability to appeal to an appellate tribunal makes it apparent that there was adequate opportunity to raise constitutional issues). The lack of an appeal procedure also indicates that the actions of the ISP Panel are not judicial in nature, for if the Panel was exercising a judicial function there would likely be a procedure for appeals. This implicates the first requirement of the *Younger* doctrine.

In addition, this Court is unsure of the extent to which the ISP Panel will be able to adequately review the Plaintiff's constitutional claims. The record is light as to whether the Plaintiff has been able to fully argue his constitutional claims in front of the Panel. With no opportunity for any review of those claims in state court, if it happens that the ISP Panel has not been adequately reviewing them, there cannot be an adequate opportunity for the claims

---

2. The ISP program has been described as resting "between traditional probation and parole" but being "definitely a product of the judiciary." *State v. Clay*, 553 A.2d 1356, 1358, 230 N.J.Super. 509 (N.J.Super.Ct.App.Div.1989). However, the program is also "funded by the legislature ..., endorsed by the Executive branch, and operated by the Judiciary." *Id.* at 1358.

to be heard. *Ohio Civil Rights Comm'n,* 477 U.S. at 629, 106 S.Ct. 2718.

## III.

█ Plaintiff seeks a preliminary injunction reinstating him to ISP and removing him from incarceration. A district court should grant preliminary injunctive relief only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest. *Maldonado v. Houstoun,* 157 F.3d 179, 184 (3d Cir.1998).

In light of the fundamental constitutional issue raised by the Plaintiff, the availability of preliminary injunctive relief will turn primarily on whether Plaintiff has sufficiently demonstrated a reasonable likelihood of success on the merits with respect to his constitutional claim.

## IV.

## A.

In order to show a likelihood of success on the merits in his § 1983 retaliation claim the Plaintiff must demonstrate (1) that the conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action as a result of his actions; and (3) that there is a causal link between the constitutionally protected conduct and the adverse action. *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001). Should the Plaintiff establish that the constitutionally protected conduct "was a substantial or motivating factor in the challenged decision, prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

█ There is no question that the conduct which led to the alleged retaliation was constitutionally protected. Most of the infractions cited by the ISP officers involved the Plaintiff either speaking to the press, protesting and handing out pamphlets outside of the courthouse, running a website, or producing and appearing in television commercials. This behavior is clearly protected by the First Amendment, particularly since it primarily involved the Plaintiff's belief that marijuana should be legalized.[3] Such speech involves a public issue and is explicitly the type of speech that the First Amendment is designed to protect.[4] *See Boos v. Barry,* 485 U.S. 312,

---

**3.** While the line between the promotion of the use of marijuana and the promotion of a change in the marijuana laws is not always completely clear, Plaintiff has generally been careful to advocate only the legalization of marijuana. The various newspaper articles quoting the Plaintiff do not indicate him advocating that people use marijuana. Instead, he advocates legalizing marijuana or discusses an unrelated child custody case and claims that as a Rastafarian he is being discriminated against. The articles even state that the Plaintiff is no longer a user of marijuana himself.

The transcripts of Plaintiff's commercials advocate a change in the drug laws and argue that marijuana is medically beneficial. They do not advocate violating the law. This is also true of Plaintiff's pamphlets and website. The actions of the Plaintiff, taken together, demonstrate how difficult it is to draw a strict line between what is the promotion of a change in the law and what is the promotion of violating the law. However, there is no evidence indicating that the Plaintiff has specifically called on people to break the existing drug laws, even in protest against them. Therefore, the Court finds that the Plaintiff has used his First Amendment rights to advocate a change in the existing drug laws.

**4.** The speech at issue here does not fall under an unprotected category of speech because it is not directed at inciting imminent lawless action, only a change in the existing laws. *See Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).

318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ("debate on public issues should be uninhibited, robust, and wide-open").

The Plaintiff also clearly suffered an adverse action by a state actor. He was removed from ISP and placed back in jail. Certainly placement in ISP, where the Plaintiff was able to live at home with his family and enjoy some level of freedom, is preferable to incarceration.

Based on the evidence before the Court there is a causal link between the actions of the Plaintiff and the adverse action taken against him. In other words, Plaintiff's constitutionally protected activities were substantial or motivating factors in the decision to remove him from the ISP program. The vast majority of the complaints against the Plaintiff involved his actions supporting the legalization of marijuana. The first time he was removed from ISP was following the discovery that he had been handing out fliers and protesting in front of the courthouse. In addition, the report of the ISP officer at that time specifically states that his failure to refrain from advocating the use of marijuana was the reason for his removal from the program.[5] His second and final removal from ISP followed disputes with the ISP officers over the Plaintiff's television commercials, website, and contact with the press.

In fact, the only complaints regarding the Plaintiff's behavior that are not speech related involved a failure to promptly notify the ISP officer when his first day of work was postponed, the alleged failure to turn over a tape recorder that was in the hands of the Plaintiff, the attendance at the Alcoholics Anonymous meeting when the Plaintiff was confined to his home, and

Plaintiff's failure to make progress towards the payment of his court ordered fines.[6] These are all minor violations of the conditions placed upon the Plaintiff and it is doubtful that without the numerous other complaints he would have been removed from ISP. In addition, only the last complaint regarding the fines occurred after his first removal from the program, when the report on the Plaintiff clearly stated he was being removed only for the speech related issues. The general timing of his removals from ISP and the sheer quantity of speech related complaints makes it obvious that the speech related activities were the substantial or motivating factors in the adverse action taken against him.

The Defendants argue that even absent the protected conduct they would have still removed the Plaintiff from the program for legitimate penological reasons. As was noted above, the evidence is clear that the Defendants would almost surely not have removed the Plaintiff from ISP absent his speech related behavior, even for legitimate penological reasons. There are also no legitimate penological interests in limiting the Plaintiff's free speech right to advocate the legalization of marijuana. Conditions imposed on released offenders or prisoners in general cannot be more broad than is necessary and the Defendants here have not identified any justifications for restrictions on the Plaintiff's ability to advocate for the legalization of marijuana. *See U.S. v. Freeman,* 316 F.3d 386 (3d Cir.2003). The Defendants may have had a penological justification for limiting Plaintiff's speech rights regarding the use of marijuana, but no attempt was made to delineate what would constitute appropri-

---

**5.** The Court notes that the Plaintiff's actions were actually closer to advocating the legalization, not the use, of marijuana.

**6.** Plaintiff argues that he did not have the necessary means to pay the fines and that the ISP officers had never previously indicated that this was a problem.

ate speech. Clearly, the Plaintiff has shown a likelihood of success on the merits of his § 1983 action.

**B.**

█ The next requirement for this Court to order a preliminary injunction is for the Plaintiff to demonstrate that he will suffer irreparable harm if the injunction is not granted. "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir.1989). As Plaintiff is currently incarcerated and will remain so unless a preliminary injunction is issued, this is a harm which cannot be redressed following a trial. Therefore, the requirement that the Plaintiff suffer an irreparable harm is satisfied.

**C.**

As for the third requirement for the Court to issue a preliminary injunction, the Defendants will not suffer any irreparable harm from the Plaintiff being returned to ISP. The Plaintiff will remain in the custody of the Defendants and they will continue to have supervisory authority over him.

**D.**

The final requirement for a preliminary injunction is that granting the injunction be in the public interest. Certainly it is in the public interest for constitutional rights to be protected. *See Favia v. Indiana Univ. of Pennsylvania,* 812 F.Supp. 578, 585 (W.D.Pa.1993), *aff'd* 7 F.3d 332 (3d Cir.1993). The First Amendment exists so as to promote debate on issues of public importance. In this case, the advocacy of the legalization of marijuana is a legitimate political position in this country. The Libertarian Party, whose presidential candidate received over 380,000 votes in the 2000 election, advocates the legalization of

drugs. Libertarian Party website *at http:// www.lp.org/issues/relegalize.html* and *http://www.lp.org/campaigns/pres/.* Many elected public officials have called for a liberalization of the nation's drug laws. Simply put, Plaintiff's place in this debate will do nothing to harm a public that is already itself debating the current state of our nation's drug laws.

In addition, the release of the Plaintiff into ISP should not lead to any harm or risk to the public. The Plaintiff has passed all drug tests since entering the program and has not broken any laws. The complaints against him mainly consist of his use of peaceful protest as a means of promoting his viewpoint. There is little evidence that his activities have crossed the line and promoted the use of illegal drugs.

**V.**

Because of the nature of the ISP Panel's proceedings and the questionable ability of the Plaintiff to adequately present his constitutional issues before that Panel, there is no abstention in this case. Plaintiff has shown that he is likely to succeed on the merits of his action, that he will suffer irreparable harm if an injunction is not granted, and that granting such an injunction will not irreparably harm the Defendants and is in the public interest. Accordingly, this Court will grant the Plaintiff's motion for a preliminary injunction and order him returned to ISP. The ISP officers will be forbidden from removing the Plaintiff from ISP for any future violations unless they first give the Plaintiff forty-eight (48) hours notice of their intentions. Should there be the potential for immediate harm to the public good if the Plaintiff is not removed from ISP the Defendants may make an emergency motion with this Court. Plaintiff will be put on notice that one of the con-

ditions of his release is that he not promote the illegal use of marijuana.

## ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

This matter having appeared before the Court upon Plaintiff's request for a preliminary injunction, the Court having reviewed the submissions of the parties and having heard oral argument, for the reasons set forth in an opinion which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

**IT IS** on this *24th* day of January, 2003,

**ORDERED THAT:**

1. Plaintiff's request for a preliminary injunction reinstating him to the Intensive Supervision Program is **GRANTED.**

2. Defendants are **PROHIBITED** from removing the Plaintiff from ISP for any future violations unless they first give the Plaintiff forty-eight (48) hours notice of their intentions. Should there be the potential for immediate harm to the public good if the Plaintiff is not removed from ISP the Defendants may make an emergency motion with this Court.