**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 3 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SUZANNE SHELL,

        Plaintiff,

    and

APRIL FIELDS,

        Plaintiff-Appellant,

v.

ROCCO F. MECONI, individually and
officially; FREMONT COUNTY
COLORADO DEPARTMENT OF
HUMAN SERVICES, officially;
STEVE CLIFTON, individually and
officially; DAWN RIVAS,
individually and officially; TODD
HANENBERG, individually and
officially; DAN C. KENDER,
individually; ANNA HALL OWEN,
individually and officially,

        Defendants-Appellees,

    and

FREMONT COUNTY DISTRICT
COURT,

        Defendant.

No. 04-1133
(D.C. No. 03-RB-743 (MJW))
(D. Colo.)

---

SUZANNE SHELL,

       Plaintiff-Appellant,

  and

APRIL FIELDS,

       Plaintiff,

v.

ROCCO F. MECONI, individually and
officially; FREMONT COUNTY
COLORADO DEPARTMENT OF
HUMAN SERVICES, officially;
STEVE CLIFTON, individually and
officially; DAWN RIVAS,
individually and officially; TODD
HANENBERG, individually and
officially; DAN C. KENDER,
individually; ANNA HALL OWEN,
individually and officially,

          Defendants-Appellees,

and

FREMONT COUNTY DISTRICT
COURT,

          Defendant.

No. 04-1155
(D.C. No. 03-RB-743 (MJW))
(D. Colo.)

-2-

---

**ORDER AND JUDGMENT** [*]

---

Before **HARTZ** and **BALDOCK** , Circuit Judges, and **BRIMMER** ,[**] District Judge.

---

Pro se plaintiffs April Fields and Suzanne Shell filed separate appeals challenging the district court's order dismissing their civil rights action against defendants Rocco F. Meconi, the Fremont County Colorado Department of Human Services (Fremont County DHS), Steve Clifton, Dawn Rivas, and Todd Hanenberg (collectively, the Fremont County defendants), under, alternatively, the *Younger* and *Rooker-Feldman* doctrines, [1] or Fed. R. Civ. P. 12(b)(6).

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). These cases are therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

[1] The *Younger* abstention doctrine, a judicially created bar to federal court interference with ongoing state court proceedings, takes its name from *Younger v. Harris* , 401 U.S. 37 (1971). The *Rooker-Feldman* doctrine, a jurisdictional prohibition based on 28 U.S.C. § 1257 which holds that federal review of state court judgments (with the exception of habeas corpus) can be obtained only in the United States Supreme Court, derives from *Rooker v. Fidelity Trust Co.* , 263 U.S.

(continued...)

Plaintiffs' appeals also challenge the district court's Rule 12(b)(6) dismissals of their claims against defendants Dan C. Kender and Anna Hall Owen. We liberally construe plaintiffs' pro se pleadings. *Haines v. Keener*, 404 U.S. 519, 520-21 (1972) (per curiam).

This court reviews de novo a district court's decision to abstain from exercising jurisdiction under the *Younger* doctrine. *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). We likewise review de novo a district court's dismissal of a complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, and a Rule 12(b)(6) dismissal. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001); *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998). Additionally, "[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

Applying these standards, we agree with the district court's decision to adopt the magistrate judge's recommendation that plaintiffs' claims against the Fremont County defendants be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. But the district court's implicit

---

[1](...continued)
413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

determination that it had subject matter jurisdiction over plaintiffs' identical claims against Mr. Kender and Ms. Owen was misplaced. The *Rooker-Feldman* doctrine barred these claims as well. We therefore dispose of the underlying case on jurisdictional grounds and do not reach its merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Our disposition, which differs slightly from the district court's, is easily accommodated by modifying the district court's dismissal to make clear that the underlying case should have been dismissed for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. As modified, the district court's judgment is affirmed.

## I. Background

Ms. Fields's daughter was the subject of a dependency and neglect proceeding initiated by the state of Colorado in January 2003. In connection therewith, the state provided Ms. Fields a court-appointed attorney, Mr. Kender, but Ms. Fields also hired Ms. Shell, a journalist who researches and documents child protection agencies' practices, to act as an expert consultant. Shortly thereafter, Ms. Fields executed a power of attorney naming Ms. Shell as her agent. Ms. Fields also agreed to be included in Ms. Shell's documentary video project concerning child protection services.

On April 16, 2003, Mr. Meconi, the Fremont County DHS's attorney, filed a motion in state court to make Ms. Shell a special respondent in the pending

dependency and neglect action. The motion sought to prevent Ms. Shell "from contacting the minor child or [Ms. Fields] . . . and from otherwise being involved in the proceedings . . . , including, but not limited to, acting as counsel for [Ms. Fields] or otherwise engaging in the unauthorized practice of law." R. Vol. I, Doc. 1 at 8-9.

On April 25, in anticipation of a state court hearing on the motion to make Ms. Shell a special respondent, Ms. Shell, who is not an attorney, and Ms. Fields, through Ms. Shell (pursuant to the power of attorney), filed a "Complaint and Motion for Declaratory and Injunctive Relief and Damages," alleging impediments to Ms. Shell's involvement in Ms. Fields's dependency and neglect action. [2] *Id.* Citing 42 U.S.C. §§ 1983 and 1985(3), plaintiffs asserted that defendants–through their "actions and inactions . . . under the color of law and/or conspiring to act with the defendants who are acting under the color of law"–were depriving plaintiffs of their freedom to associate (in order to advocate and educate about child protection practices); right to contract (by attempting to invalidate the power of attorney and by filing a motion to make Ms. Shell a

---

[2]    The federal district court, in an order dated May 14, observed that Ms. Shell had signed plaintiffs' federal complaint on Ms. Fields's behalf. The court ruled that there was no showing that Ms. Shell is an attorney, and notwithstanding the power of attorney, Ms. Shell could neither represent Ms. Fields nor sign any documents on Ms. Fields's behalf. The court directed Ms. Fields to correct the omission of her signature on the complaint, which she did.

special respondent); freedom of the press (by attempting to block the parties'

contact and thus prevent Ms. Fields from being included in Ms. Shell's

documentary video project); and due process (by not allowing plaintiffs "the right

to a fair hearing by an impartial judge, the right to present all the evidence . . . [,]

the right to cross examine . . . , [and] the right to effective assistance of

counsel."). R. Vol. I, Doc. 1 at 10-13. Plaintiffs also asserted that

defendants–again, through their "actions and inactions . . . under the color of law

and/or conspiring to act with the defendants who are acting under the color of

law," *id.* at 13,–were discriminating against Ms. Shell (and defaming her) due to

her viewpoint; specifically, her opinion that in Fremont County "routine

violations of rights and rampant abuses permeat[e] every aspect of . . . child

protection," *id.* at 3. As for relief, plaintiffs asked the federal district court to

"[a]ssume jurisdiction over th[e] action," and to enter declaratory and injunctive

relief (1) restraining defendants from conducting a hearing on the state court

motion to make Ms. Shell a special respondent; [3] (2) "prohibiting . . . defendants

from engaging in any future conduct which would impair or deny plaintiffs'

rights "; and (3) "ensur[ing] the fair and appropriate handling" of Ms. Fields's

---

[3]     Plaintiffs duplicated their request that defendants be restrained from conducting a hearing on the motion to make Ms. Shell a special respondent in an "Emergency Motion for Injunctive Relief," R. Vol. I, Doc. 2, that they filed simultaneously with their federal complaint. The federal district court denied the Emergency Motion on April 25, the same day it was filed.

dependency and neglect case by "chang[ing] the venue," by appointing a "DHS agency other than [the] Fremont County DHS," and by "replac[ing] the GAL [guardian ad litem]." *Id.* at 14. Plaintiffs also sought monetary damages.

On May 9, after a hearing on the motion to make Ms. Shell a special respondent, the state court issued an order granting the motion, vesting legal custody of Ms. Fields's daughter with the Fremont County DHS, and scheduling a jury trial. In making Ms. Shell a special respondent the court observed that Ms. Shell, "in the guise of acting as the agent" for Ms. Fields, has "essentially been providing legal advice to [Ms. Fields]." App. to Shell's Aplt. Br. at 56. The state court further ordered Ms. Shell

> specifically prohibited from:
>
> a.    Preparing, providing or otherwise generating any legal documents;
>
> b.    Providing any legal advice to [Ms. Fields], regardless of whether she (Suzanne Shell) characterizes it as legal advice or counseling;
>
> c.    . . . having any relationship or contact with [Ms. Fields] at all; [and]
>
> d.    . . . exercising, in any way, the rights or authority expressed in the power of attorney given to her by [Ms. Fields] . . . .

*Id.*

On July 10, plaintiffs filed separate supplements to their federal complaint. Neither plaintiff raised any new claims. But Ms. Shell's supplement observed

that "the action the plaintiffs wanted restrained [had] occurred, and further irreparable deprivations were accomplished by the actions of the defendants." Aplee. App. at 56. Ms. Shell also claimed that "[s]ince the filing of the [federal complaint], the defendants have continued committing actions which constitute ongoing and irreparable deprivations of the plaintiffs' rights." *Id.*

On February 11, 2004, a magistrate judge recommended that plaintiffs' claims against the Fremont County defendants be dismissed pursuant to both the "*Younger* [doctrine] and the *Rooker-Feldman* doctrine." R. Vol. I, Doc. 92 at 17. In the alternative, the magistrate judge considered the merits of plaintiffs' claims against the Fremont County defendants and recommended that each claim against each Fremont County defendant be dismissed under Rule 12(b)(6). The magistrate judge then turned to the 12(b)(6) motions filed by Mr. Kender and Ms. Owen and recommended that each claim against each defendant be dismissed under Rule 12(b)(6).

The federal district court adopted the magistrate judge's recommendation and dismissed plaintiffs' case in its entirety. In so doing, the district court did not indicate whether its dismissal was based on the "*Younger* [doctrine] and the *Rooker-Feldman* doctrine," R. Vol. I, Doc. 92 at 17, the merits, or both.

## II. Analysis

At the time plaintiffs filed their federal action, in April 2003, questions loomed about whether the federal district court should abstain pursuant to the *Younger* doctrine. *See Amanatullah*, 187 F.3d at 1163. But after the state court granted the motion to make Ms. Shell a special respondent, in May 2003, the *Rooker-Feldman* doctrine came to the forefront.

"[T]he *Rooker-Feldman* doctrine prohibits a lower federal court from considering claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment." *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002) (citations and quotations omitted). "In other words, *Rooker-Feldman* precludes a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court . . . ." *Id.* (alteration in original) (quotation omitted). "This prohibition extends to all state-court decisions–final or otherwise." *Id*. at 475.

In this case, plaintiffs' federal causes of action were not decided by the state court; indeed, plaintiffs did not raise them in the state court. We therefore consider whether they are inextricably intertwined with a prior state court judgment, such that the federal district court here was divested of subject matter jurisdiction.

"Although it is difficult to formulate a foolproof test" to determine when a federal plaintiff's claims are inextricably intertwined with a prior state court judgment, "we approach the question by asking whether the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*. If it did, *Rooker-Feldman* deprives the federal court of [subject matter] jurisdiction." *Kenmen Eng'g*, 314 F.3d at 476 (footnote omitted). In conducting this inquiry, our focus is on "the *relief* sought by the federal-court plaintiff." *Id.*; *see also Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1148 (10th Cir. 2004).

The relief sought by Ms. Fields and Ms. Shell stems from the state court motion to make Ms. Shell a special respondent. And, when Ms. Shell was made a special respondent by state court order, the injury "plaintiffs wanted restrained [had] occurred." Aplee. App. at 56. That is, the state court order making Ms. Shell a special respondent caused the injury for which plaintiffs sought relief in federal court. Moreover, plaintiffs' supplements to their federal complaint essentially asked the federal district court to perform appellate review of the state court's order–review that is barred by *Rooker-Feldman*. Notwithstanding, plaintiffs make two attempts to avoid this result. Both are unavailing.

First, plaintiffs assert that Ms. Shell (in Ms. Fields's words) "has never been" a party to the underlying dependency and neglect action and that

-11-

*Rooker-Feldman* is therefore inapplicable. Fields's Aplt. Br. at 8 (citing *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994)); *but see Kenmen Eng'g*, 314 F.3d at 480 (rejecting the "contention that the absence of a full and fair opportunity to litigate a claim in the prior state-court proceeding bars application of the *Rooker-Feldman* doctrine"). Plaintiffs' assertion that Ms. Shell "has never been" a party to the underlying case, Fields's Aplt. Br. at 8, is false. The state court made Ms. Shell a party to the dependency and neglect action by order dated May 9, 2003, at which point Ms. Shell could have appealed the state court order that made her a special respondent and raised her federal claims.

Second, plaintiffs contend that the *Rooker-Feldman* doctrine "does not bar federal court actions raising federal claims that were not litigated in the state court proceedings," Fields's Aplt. Br. at 9, and that plaintiffs' federal causes of action "were never raised in the [state] court and were not the subject of the state court hearing," Shell's Aplt. Br. at 13-14. On the facts of this case, this claim is without merit. Although plaintiffs did not raise their federal claims in state court, these claims are inextricably intertwined with the state court order; moreover, plaintiffs' prior omission of their federal claims cannot now be used to circumvent application of the *Rooker-Feldman* doctrine. *See Taylor v. Fed. Nat. Mortgage Ass'n*, 374 F.3d 529, 532-33 (7th Cir. 2004) ("[F]ederal claims presented to the district court that were not raised in state court . . . may still be

-12-

subject to *Rooker-Feldman* if those claims are 'inextricably intertwined' with a state court judgment."); *Strasen v. Strasen*, 897 F. Supp. 1179, 1183 (E.D. Wis. 1995) ("A district court may not entertain an argument that, even if not argued in state court, is 'inextricably intertwined' with a state court judgment.").

### III. Conclusion

The district court properly concluded that it was without subject matter jurisdiction under the *Rooker-Feldman* doctrine to entertain plaintiffs' claims against the Fremont County defendants. For the same reason, the district court did not have subject matter jurisdiction to hear plaintiffs' identical claims against Mr. Kender and Ms. Owen. The district court should have sua sponte dismissed the claims against Mr. Kender and Ms. Owen for lack of subject matter jurisdiction rather than address the merits of plaintiffs' claims against these two defendants. *See Tafoya v. United States Dep't of Justice,* 748 F.2d 1389, 1390 (10th Cir. 1984) ("Insofar as subject matter jurisdiction is concerned, it has long been recognized that a federal court must, *sua sponte*, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings . . . ."). Because the district court did not have subject matter jurisdiction over any of the claims raised by plaintiffs, we MODIFY the district court's dismissal of all claims against all defendants to be for lack of subject matter jurisdiction under the

*Rooker-Feldman* doctrine. As modified, the district court's judgment is

AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge