EBEL, Circuit Judge.
Plaintiff-Appellant Dena Brown sued Defendant-Appellee Robert Day, the Director of Kansas’s Division of Health Policy and Finance (“HPF”),[1] in federal court pursuant to 42 U.S.C. § 1983, after Day issued a Final Order terminating Brown’s Medicaid benefits. Brown alleged that Day’s decision, which purported to execute newly enacted Kansas law, violates federal Medicaid statutes and regulations. The federal district court initially granted Brown’s motion for a preliminary injunction, holding that HPF had acted arbitrarily and capriciously in terminating Brown’s benefits. Shortly thereafter, Day moved to dismiss, claiming Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny compelled the federal court to abstain from exercising jurisdiction over Brown’s action. The district court agreed and dismissed the case. Brown appeals from this application of the Younger abstention doctrine.
There are two main issues presented. This court is asked to determine whether there is an ongoing proceeding in this case, and whether any ongoing proceeding in this case is the type entitled to Younger deference. Because we decide this case on the basis of the type of proceeding at issue, we do not reach the open question whether the Younger doctrine compels a federal court to decline jurisdiction over a federal cause of action initiated to challenge a state administrative agency’s final decision when appeal to state court was possible.
The dispositive issue in this case is whether a federal plaintiffs challenge to a state administrative agency’s decision to terminate her Medicaid benefits is the type of proceeding entitled to Younger deference. From the Younger acorn — a holding barring federal courts from enjoining ongoing state criminal prosecutions — a judicial oak has grown. Now, federal courts must also decline jurisdiction over cases brought to enjoin state civil or administrative enforcement proceedings. As discussed below, however, there appears to be a distinction between cases where the state proceeding involves the state coer-cively enforcing its laws and cases where state proceedings involve the federal plaintiff seeking a remedy for a past wrong. Those cases where the federal plaintiff has sought a state remedy are not the type of cases subject to Younger abstention. We must consider whether Brown’s challenge to the HPF’s decision to terminate her Medicaid benefits is such a coercive or remedial proceeding. Because we determine that the proceeding is remedial and not entitled to Younger abstention, we need not reach the ongoing proceeding issue.
In sum, we conclude that abstaining in this case would extend the Younger doctrine to remedial cases, in contravention of Congress’s intent in enacting § 1983 and of Supreme Court precedent. We exercise *885 jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.
I. Background
Plaintiff-Appellant Dena K. Brown is a developmentally disabled adult. Although she was forty-six years old at the time this suit was filed on her behalf, she functions roughly at the level of a three- or four-year-old child. As a result of her disabilities, Brown resides at a private, not-for-profit residential care facility run by Starkey, Inc. The services she receives at the facility cost approximately $5,000 per month. Brown’s monthly income is $864, which she receives in Social Security benefits because of her disabilities. Until August 2005, Medicaid payments bridged the gap between Brown’s income and the cost of her care facility.
Defendant-Appellee Robert M. Day is the Director of the HPF, a division of Kansas’s Department of Administration. Day’s duties include determining and implementing policies for medical assistance programs, including Medicaid.
A. The Medicaid Program
Congress established the Medicaid program pursuant to Title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396-1396v. See Houghton ex rel. Houghton v. Reinertson, 382 F.3d 1162, 1164 (10th Cir. 2004). By means of the program, Congress invited the states to cooperate with the federal government in providing health care to persons who cannot afford such care. See Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). If a state opts to participate, it receives financial assistance from the federal government, on the condition that the state operates its Medicaid program in compliance with federal statutory and regulatory requirements. Kansas has opted to participate in the Medicaid program.
The statutory framework requires all participating states to cover the “categorically needy”; this class consists primarily of persons who receive cash assistance from the Social Security Administration. See 42 U.S.C. § 1396a(a)(10)(A)(i). In addition, “at the option of the State,” medically needy persons may also be covered. Id. § 1396a(a)(10)(A)(ii). This class includes those persons who are “18 years of age or older and [are] permanently and totally disabled.” 42 U.S.C. § 1396d(a)(v). Kansas has opted to cover this class. See Kan. Admin. Reg. 30-6-85(c).
To ensure the Medicaid program serves needy persons, the program includes income and resource eligibility thresholds. Congress has nevertheless forbidden the states from employing methodologies for determining an applicant’s income or resources that would render an individual ineligible for Medicaid where that individual is eligible for Supplemental Security Income (“SSI”) from the Social Security Administration. See 42 U.S.C. § 1396a(r)(2)(A)(i). In determining a person’s eligibility for Medicaid, states must use reasonable standards that only factor in income and resources which are available to the recipient and which would affect the person’s eligibility for SSI. Id. § 1396a(a)(17).
The applicable regulations state that a resource is not available if the person has no authority to liquidate it as a property right. 20 C.F.R. § 416.1201(a)(1). The Social Security Administration explained that assets in a trust are available resources only “[i]f [the beneficiary has] the legal authority to revoke the trust or direct the use of the trust assets for his/her own support and maintenance.... ” Social Security Administration, Program Operating Manual System (“POMS”) § SI 01120.200(D)(2). The trust’s terms *886 “and/or ... State law” determine this issue. Id.
B. Brown’s Eligibility for Medicaid
When Brown’s mother passed away in 2003, Brown became the beneficiary of a residuary trust. The trust corpus includes approximately $15,000 in cash, two annuities totaling about $23,000, and the rights to 160 acres of agricultural land in King-man County, Kansas (valued at approximately $30,000). Brown’s brother, Donald, is the trustee. Given Brown’s disabilities, the trust provides the Trustee with the discretion to make a distribution of trust income or principal for Brown’s benefit. Brown herself, however, has no legal authority to compel distribution under the trust. As a result, Kansas did not deem Brown’s trust assets “available resources” before 2004. Other than the trust, Brown apparently possesses no other assets that would allow her to pay the difference between her Social Security benefits and the costs of her residential care facility.
C. HPF Proceedings Regarding Brown’s Medicaid Benefits
Kansas amended its applicable law, effective July 1, 2004. After that date, Kansas deemed trust resources available “to the extent, using the full extent of discretion, the trustee may make any of the income or principal available to the applicant or recipient of medical assistance.” Kan. Stat. § 39-709(e)(3). In accordance with this amendment, HPF notified Brown that after August 31, 2005, she would no longer receive medical assistance because she was not medically needy.
Brown challenged this decision by requesting a hearing before HPF. She sought a hearing because it was not clear at that time whether Kansas’s new law could be applied retroactively to her. Moreover, during the pendency of her appeal, she continued to receive benefits. The hearing officer overturned the decision to terminate Brown’s Medicaid benefits on January 15, 2006, apparently reasoning that the new Kansas law did not apply to trusts set up prior to its enactment.[2]
However, in a Final Order dated April 26, 2006, Day reinstated HPF’s original decision to terminate Brown’s benefits. In the order, Day informed Brown that she had a right to file a petition for state judicial review of the order and that such a petition must be filed within thirty days.[3] Following up on this final decision, on April 30, 2006, HPF wrote Brown to inform her that “[w]e are closing your medical assistance and food stamp case effective May 31, 2006 because your resources exceed the maximum allowable amount for your household size.”
D.Brown’s Federal Lawsuit
Just a few days before her benefits were due to terminate, Brown filed suit in the *887 U.S. District Court for the District of Kansas against Day in his official capacity as director of HPF. She thus declined to petition the Kansas state courts for review as provided for under the Kansas Judicial Review Act. See Kan. Stat. § 77 — 613(b). In her federal complaint, Brown claimed, pursuant to 42 U.S.C. § 1983, that HPF violated federal Medicaid law when it determined that the assets in the trust left to Brown by her mother are “available assets.” As a remedy, Brown sought a declaratory judgment and an injunction barring HPF from terminating her Medicaid coverage.
The district court granted Brown’s motion for a preliminary injunction on June 8, 2006. The court “conclude[d] that in terminating plaintiffs Medicaid coverage based on K.S.A. § 39-709(e)(3), HPF has acted arbitrarily, capriciously and in contravention of 42 U.S.C. § 1396a(r)(2)(A)(I).”
About a month after the district court issued this order, Day filed a motion to dismiss or stay, arguing that the federal court should abstain in light of Brown’s option to appeal HPF’s decision to the Kansas state courts. Day reasoned that Brown had turned her back on an ongoing state proceeding when she failed to pursue judicial review in the Kansas state courts. In addition, Day attached a document entitled “Petition for Civil Enforcement” that he claimed he would shortly file in Kansas state court. The Petition claims, in relevant part, that “Don Brown, as trustee of the Brown Trust, should be liable to the [HPF] under K.S.A. 39-719a for all Medical Assistance provided to Dena Brown from July 1, 2004 to the present.” The record is silent as to whether Day or the HPF ever filed this petition.
The district court dismissed the federal case, holding that Younger v. Harris and its progeny commanded abstention because (1) Brown initiated a federal action instead of exhausting her state appellate options; (2) the Kansas state court provided an adequate forum for Brown’s challenge to the HPF decision; and (3) Kansas has an interest in “[protecting the fiscal integrity of public assistance programs.”
Brown then filed a motion to alter or amend the judgment, challenging the court’s abstention. In response, the district court explicated more thoroughly its rationale for concluding that there was an ongoing state proceeding entitled to Younger deference. The court overruled Brown’s motion to alter or amend the original judgment. Brown timely appealed the dismissal of her case.
II. Discussion
The issue presented here is whether a federal district court must abstain where the federal plaintiff has previously requested a hearing and received a final order regarding an agency’s decision to terminate benefits. We review de novo a district court’s decision to abstain pursuant to Younger. Amanatullah v. Colo. Bd. of Med. Exam’rs, 187 F.3d 1160, 1163 (10th Cir.1999).
Under Younger and its progeny,
[a] federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings “involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.”
Id. (quoting Taylor v. Jaquez, 126 F.3d 1294, 1297 (10th Cir.1997)).
In considering these three conditions, this court “must be sensitive to the *888 competing tension between protecting federal jurisdiction and honoring principles of Our Federalism and comity.” Taylor, 126 F.3d at 1296. Critically, this court must keep in mind that abstention “is the exception, not the rule,” and hence should be “rarely ... invoked, because the federal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them.” Ankenbrandt v. Richards, 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (citation and internal quotations omitted). Nonetheless, Younger abstention is “non-discretionary ... absent extraordinary circumstances,” if the three conditions are indeed satisfied. Amanatullah, 187 F.3d at 1163.[4]
The initial prong of the Younger inquiry involves two sub-parts. This court must determine whether there is an ongoing state proceeding. See id. at 1163-64; see also Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1242 (10th Cir.2001). The court must also decide whether that proceeding is the type of state proceeding that is due the deference accorded by Younger abstention. See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans (“NOPSI”), 491 U.S. 350, 369, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (“Respondents’ case for abstention still requires, however, that the Council proceeding be the sort of proceeding enti-tied to Younger treatment.”). Both of these issues raise questions of first impression for this court. Because we decide this case based on the type of proceeding, we decline to decide whether a system for appealing a state administrative order creates a ongoing proceeding for Younger purposes. We hold that this case is not the type that warrants abstention. Accordingly, the district court erred in dismissing the case.
A. The Type of Ongoing Proceeding
As noted above, there are two aspects of the “ongoing proceeding” inquiry, whether there is an ongoing proceeding and whether it is the type afforded Younger deference. The Supreme Court, in Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), clarified some of the occasions when Younger deference was appropriate and some occasions when it was not. In this vein, the Court distinguished its prior holding in Patsy v. Florida Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), that a federal discrimination claim could proceed without exhaustion or deference to the state proceeding. The court distinguished Patsy on the ground, inter alia, that the Patsy administrative proceedings were remedial rather than coercive.[5] See Dayton *889 Christian Schs., 477 U.S. at 627 n. 2, 106 S.Ct. 2718. This court has yet to delineate a test for determining whether a state proceeding is remedial or coercive. Hence, we turn to the decisions of our sister circuits.
As discussed in depth below, the most compelling test — one crafted by the First Circuit — asks the court to consider two issues in deciding whether Dayton Christian Schools or Patsy controls. First, we must query whether the federal plaintiff initiated the state proceeding of her own volition to right a wrong inflicted by the state (a remedial proceeding) or whether the state initiated the proceeding against her, making her participation mandatory (a coercive proceeding). Second, we must differentiate cases where the federal plaintiff contends that the state proceeding is unlawful (coercive) from cases where the federal plaintiff seeks a remedy for some other state-inflicted wrong (remedial). Even this test is not entirely determinative; below, we also discuss other factors that may distinguish remedial proceedings from coercive ones.
Here, despite Day’s claim to the contrary, the state court administrative proceedings were not coercive. Brown initiated the state administrative proceeding after her benefits were summarily terminated. The state did not compel her to participate in the proceedings. Moreover, Brown seeks not to enjoin the state proceedings, but to secure relief from the state’s allegedly unlawful conduct by recovering her Medicaid benefits. Accordingly, this state proceeding was not the type of proceeding entitled to Younger deference.

B. Dayton Christian Schools’ Modification of Patsy

As noted above, Younger originally sought to prevent federal courts, sitting in *890 equity, from enjoining state prosecution of criminal defendants. See Younger, 401 U.S. at 46, 91 S.Ct. 746; see also Huffman, 420 U.S. at 602, 95 S.Ct. 1200. Through a series of cases, the Court expanded the Younger abstention doctrine to state civil enforcement cases (Huffman) and administrative agency proceedings (Dayton Christian Schools). However, in extending the Younger doctrine to state administrative proceedings, the Supreme Court had to explain why Patsy (which did not require deferral to state proceedings) did not apply.
Accordingly, in Dayton Christian Schools, the Court asserted:
The application of the Younger principle to pending state administrative proceedings is fully consistent with Patsy v. Florida Board of Regents, which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court. Unlike Patsy, the administrative proceedings here are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest.
477 U.S. at 627 n. 2, 106 S.Ct. 2718 (emphasis added) (citations omitted).
Seizing on this language, the lower courts have required that federal plaintiffs “perfect” their § 1983 claims by exhausting state administrative remedies only where the state administrative proceedings are coercive. See Moore, 396 F.3d at 388 (“[W]e hold that a defendant to a coercive state administrative proceeding must exhaust his state administrative and judicial remedies and may not bypass them in favor of a federal court proceeding....”); Majors, 149 F.3d at 712 (“For purposes of Younger abstention, administrative proceedings are ‘judicial in nature’ when they are coercive — i.e., state enforcement proceedings.”); O’Neill, 32 F.3d at 791 (“We therefore hold that state proceedings remain ‘pending,’ within the meaning of Younger abstention, in cases ... where a coercive administrative proceeding has been initiated by the State in a state forum ...”); id. at 791 n. 13 (noting the “critical distinction” between Dayton Christian Schools and Patsy is the coercive/remedial distinction); cf. Maymo-Melendez, 364 F.3d at 36 (“Huffman is a reliable guide only where full-fledged state administrative proceedings of a judicial character and, arguably, of a coercive nature, are directed against the federal plaintiff.”).[6]
The essence of each of these opinions is that a state’s enforcement of its laws or regulations in an administrative proceeding constitutes a coercive action, exempt from Patsy and entitled to Younger deference. Other administrative proceedings fill the “remedial” category and remain subject to Patsy’s holding that a federal § 1983 plaintiff need not exhaust state administrative remedies.
1. Differentiating Remedial from Coercive Administrative Proceedings
The First Circuit has provided the clearest guidance as to how to decide whether a state administrative proceeding is coercive or remedial. In Kercado-Melendez v. Aponte-Roque, 829 F.2d 255 (1st Cir.1987), the court analyzed a § 1983 action initiated by a Puerto Rican school superintendent *891 claiming that she had been fired because of her political beliefs. Id. at 257-58. After receiving notice that she had been fired, Kercado opted not to file an administrative appeal and, instead, proceeded with her § 1983 action in federal court. The defendant, the Secretary of Puerto Rico’s Department of Public Instruction, contended that Kereado’s failure to avail herself of the administrative appeal process required Younger abstention. Id. at 258.
A divided panel of the First Circuit rejected this argument. In the process, it highlighted two critical distinctions between Dayton Christian Schools and Patsy. The panel focused first on the “crucial distinction ... that in Patsy the state proceeding was an option available to the federal plaintiff on her own initiative to redress a wrong inflicted by the state” whereas in “other abstention cases” the participation of the federal plaintiff in the state administrative proceeding was “mandatory.” Id. at 260. Second, the panel noted that “[i]n Dayton Christian Schools and similar cases, the state proceeding is itself the wrong which the federal plaintiff seeks to correct via injunctive relief under section 1983.” Id. These two considerations provide a starting point for analyzing whether a state proceeding is coercive (and therefore entitled to Younger deference) or remedial.[7]
A third factor emerges from a review of the proceedings at issue in the cases where our sister circuits have held that state administrative and judicial proceedings are ongoing proceedings entitled to Younger deference. In these cases, the federal plaintiff sought to thwart a state administrative proceeding initiated to punish the federal plaintiff for a bad act. Thus, a common thread appears to be that if the federal plaintiff has committed an alleged bad act, then the state proceeding initiated to punish the plaintiff is coercive.
In Maymo-Melendez, the First Circuit held that the district court should have abstained from hearing a federal claim brought by a horse trainer whose license had been suspended because he had administered performance-enhancing drugs to his horses. See 364 F.3d at 34-37. The trainer had failed to pursue administrative remedies available within the Puerto Rican Racing Board. See id. at 34. Thus, unlike in Kercado-Melendez, in Maymo-Melen-dez there was an underlying bad act by the federal plaintiff being punished by Puerto Rico.
Similarly, in Laurel Sand & Gravel, Inc. v. Wilson, the Fourth Circuit held that abstention was appropriate where the plaintiff had committed an alleged bad act. 519 F.3d 156, 166-67 (4th Cir.2008). The case arose after the Maryland Department of Environment concluded that Laurel Sand & Gravel (“Laurel”), the federal plaintiff, had violated Maryland’s Dewater-ing Act. 519 F.3d at 160-61. Pursuant to the Act, Maryland had compelled Laurel, a mining company, to replace a well that had run dry in Laurel’s zone of influence. Id. at 161. In holding abstention appropriate, the Fourth Circuit relied on its 2005 decision in Moore. Id. at 165-67 (citing Moore, 396 F.3d at 388). In Moore, a federal plaintiff sought to challenge the City of Asheville’s noise ordinance, after he had been cited for violating the ordinance twice (the pertinent bad acts). 396 F.3d at 388. Mr. Moore opted not to appeal either citation to the North Carolina courts. Id. at 388-89. In essence, of course, Mr. Moore sought to protest his noise citations — and thereby challenge the *892 state-initiated enforcement proceedings against him.
In the same vein, the Third Circuit, in O’Neill, upheld abstention where the federal plaintiffs sought to challenge Philadelphia’s parking ticket procedures in federal court, but had not exhausted state judicial remedies. 32 F.3d at 787-88. The plaintiffs had amassed a slew of parking tickets over the years and sought to avoid paying them. Id. at 788-89. Finally, the apposite Seventh Circuit case dealt with a decision by the Indiana State Board of Nursing to suspend the license of a nurse who had allegedly euthanized elderly patients. Majors, 149 F.3d at 711-12. The nurse sought to bar the suspension proceedings. Id.
Each of these cases addressed state administrative enforcement proceedings; that is, each originated with the state’s proactive enforcement of its laws (horse training regulations, noise ordinances, parking ticket procedures, and licensing laws for the nursing profession). As such, each federal case arose out of situation where the federal plaintiff had engaged in misconduct and sought to block proceedings that would ultimately impose punishment for that misconduct.[8]
2. Whether the HPF proceeding (and state judicial review thereof) is remedial or coercive
Even assuming the unity of the administrative proceeding and the possibility of a subsequent petition for state court judicial review (a proposition we decline to establish), the district court properly abstained in the instant case only if the proceeding before HPF was coercive rather than remedial. In the district court’s original decision to abstain, it did not address the distinction between remedial and coercive proceedings. Instead, the court simply cited Huffman for the proposition that “Younger’s exhaustion requirement is well established.” Only after Brown sought to have the district court alter or amend its judgment did the court analyze the issue raised by Patsy. Looking to O’Neill, the court recognized that “remedial administrative proceedings [are] those brought ‘to vindicate a wrong which ha[s] been inflicted by the State.’ ” (Citing O’Neill, 32 F.3d at 791 n. 13).
Despite this guidance, the court found that the “defendant claimed that plaintiff was violating state law by collecting Medicaid benefits for which she was ineligible .... Under Kansas law, the termination of benefits to ineligible recipients is an enforcement mechanism designed to address violations of state Medicaid law.” As such, the court held the HPF administrative proceeding “was coercive for purposes of Younger because plaintiff initiated her administrative hearing as part of the state’s overall law enforcement scheme.” The court cautioned that it was a “difficult *893 question,” and noted that the court’s conclusion still left room for some administrative proceedings that would be categorized as remedial.
The district court thereby implied that Brown had violated Kansas’s Medicaid eligibility law and that the state had, as a consequence, terminated her benefits. The administrative proceedings that followed this decision were, according to the district court, necessarily coercive because they stemmed from Kansas’s decision to terminate Brown’s benefits.
We disagree with this characterization of the HPF proceedings. The district court’s standard for distinguishing coercive from remedial proceedings would divorce Younger abstention from its traditional roots. See Huffman, 420 U.S. at 604, 95 S.Ct. 1200 (“[W]e deal here with a state proceeding which in important respects is more akin to a criminal prosecution than are most civil cases.”).[9] That is, Younger originated in situations where federal involvement would block a state’s efforts to enforce its laws. See Kercado-Melendez, 829 F.2d at 260 (“Those cases [Dayton Christian Schools and similar cases] involved claims by plaintiffs that constitutional rights would be violated by virtue of the operation of the state proceedings.”). In those situations, “[c]omity and federalism concerns are at their highest.” Id.
Here, however, Brown initiated a challenge to Kansas state action by requesting a hearing before the HPF. Kansas did not mandate that she participate in any such proceedings. Rather, HPF had summarily terminated her benefits, in accordance with Kansas’s new law. Brown alleged that the application of this new law to her violates federal law because it contravenes certain terms of the federal-state Medicaid pact. The state proceedings themselves are not the challenged state conduct.
Moreover, Brown committed no cognizable bad act that would have precipitated state coercive proceedings. This critical distinction is highlighted by HPF’s threat — after Brown had already secured a preliminary injunction from the federal court — to enforce Kansas’s new eligibility law against Brown by seeking to recover “all Medical Assistance provided to [Brown] from July 1, 2004 to the present.” This threatened petition, which HPF claimed it would file in Kansas state court, was styled a “Petition for Civil Enforcement.” See Kan. Stat. § 77-624(a) (authorizing a Kansas state agency to “seek enforcement of its rule and regulation or order by filing a petition for civil enforcement in the district court”). Aside from being a transparent attempt to secure a dismissal on Younger grounds and aside from the fact that the record does not reflect that the petition was ever filed, the threat merely highlights the remedial nature of Brown’s challenge to HPF’s decision to terminate her benefits.
Because the type of ongoing proceeding at issue would be remedial, not coercive, we hold that the district court improperly abstained in this case.
III. CONCLUSION
These legal issues are undoubtedly difficult. Solicitude for state proceedings counsels one result, the federal courts’ *894 “virtually unflagging” duty to exercise jurisdiction counsels another. In the § 1988 context, it is especially useful to remember why the federal courts’ duty to exercise their jurisdiction is so imperative: Congress specifically created a federal cause of action enforceable in federal courts. For the above reasons, we conclude that the district court improperly abstained because even if there were an ongoing proceeding, it would not be the type subject to Younger abstention.[10] We REVERSE and REMAND for proceedings consistent with this opinion.

. The HPF has since been renamed the Kansas Health Policy Authority.

. This decision is not in the record.

. This alerted Brown to the applicable portions of Kansas’s Act for Judicial Review and Civil Enforcement of Agency Actions (“Judicial Review Act”), Kan. Stat. § § 77-601-77-631. Section 77-606 of the Judicial Review Act provides that the Act "establishes the exclusive means of judicial review of agency action.” Section 77-613 provides the relevant time-line for judicial review of the result of Kansas administrative proceedings. That section mandates that "a petition for judicial review of a final order shall be filed within 30 days after service of the order.” Id. § 77-613(b). Because HPF served its final decision on Brown by mail, three days are added to the 30-day window. See id. § 77-613(e). The parties do not dispute that Brown failed to petition for judicial review in the Kansas district court within 33 days of the service of HPF’s final decision; instead, Brown filed her federal suit 29 days after receiving HPF's decision.

. The Court has clarified that at least two varieties of "extraordinary circumstances" exist: (1) where the plaintiff makes a showing of bad faith or harassment by state officials responsible for the prosecution or enforcement action and (2) where the state law or regulation to be applied “is ‘flagrantly and patently violative of express constitutional prohibitions.’ " Trainor v. Hernandez, 431 U.S. 434, 442 n. 7, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (quoting Younger, 401 U.S. at 53-54, 91 S.Ct. 746); see also Morrow v. Winslow, 94 F.3d 1386, 1392 (10th Cir.1996).

. Similarly, in an attempt to cabin the Younger doctrine, the Court has suggested that Younger abstention is limited to situations where the “civil proceedings” in question (1) are enforcement proceedings or (2) "involv[e] certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.” NOPSI, 491 U.S. at 368, 109 S.Ct. 2506. Although that analysis also suggests there should not have been Younger abstention in this case, we will use the dichotomy between remedial and coercive administrative proceedings set forth in Dayton Christian Schools, 477 U.S. at 627 n. 2, 106 S.Ct. 2718, as the touchstone for determining whether the administrative proceeding is the type of proceeding that merits *889 Younger abstention. We prefer the coercive/remedial distinction because our sister circuits tend to use that articulation. See Moore v. City of Asheville, 396 F.3d 385, 388 (4th Cir.2005); Majors v. Engelbrecht, 149 F.3d 709, 712 (7th Cir.1998); O’Neill v. City of Philadelphia, 32 F.3d 785, 791 (3d Cir.1994); cf. Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 36 (1st Cir.2004). Also, the Younger pedigree is rooted in state coercive action (namely criminal proceedings) that parties were seeking to enjoin in federal court. The Younger doctrine originated in concerns that federal plaintiffs might stymie state coercive proceedings by bringing suit in the federal courts. See Younger, 401 U.S. at 46, 91 S.Ct. 746 (relying on "the fundamental policy against federal interference with state criminal prosecutions”). This same motivating concern made its way into later Younger decisions expanding the doctrine to state court civil proceedings. See Moore v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (holding that federal abstention was required where state civil proceedings centered on a child-abuse statute that was "in aid of and closely related to criminal statutes” (quotation omitted)); Trainor, 431 U.S. at 444, 97 S.Ct. 1911 (holding that federal court erred in not abstaining where state secured writ of attachment as result of civil fraud proceeding and federal plaintiff challenged attachment statute; noting that "state authorities also had the option of vindicating these policies through criminal prosecutions” (quotation omitted)); Huffman v. Pursue, Ltd., 420 U.S. 592, 604, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) ("[W]e deal here with a state proceeding which in important respects is more akin to a criminal prosecution than are most civil cases.”); cf. NOPSI, 491 U.S. at 367-68, 109 S.Ct. 2506 ("Although our concern for comity and federalism has led us to expand the protection of Younger beyond state criminal prosecutions, to civil enforcement proceedings, and even to civil proceedings involving certain orders that are uniquely in furtherance of the state courts’ ability to perform their judicial functions, it has never been suggested that Younger requires deference to a state judicial proceeding reviewing legislative or executive action.” (citations omitted)). The coercive/remedial distinction is close kin to the distinctions drawn by the Court in the civil Younger cases.

. These opinions echo that of Judge Posner: “[Younger’s ] central meaning is that a federal district court may not, save in exceptional circumstances, enjoin, at the behest of a person who has actually or arguably violated a state statute, a state court proceeding to enforce the statute against that person.” Alleghany Corp. v. Haase, 896 F.2d 1046, 1050 (7th Cir.1990), vacated on other grounds, Dillon v. Alleghany Corp., 499 U.S. 933, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991).

. Indeed, these considerations echo the Seventh Circuit's reasoning in Haase: "Younger is confined to cases in which the federal plaintiff had engaged in conduct actually or arguably in violation of state law, thereby exposing himself to an enforcement proceeding in state court....” Haase, 896 F.2d at 1053.

. Of the circuits that have addressed the ongoing-proceeding issue — and declined jurisdiction on Younger grounds' — only the Eighth Circuit’s opinion in Alleghany Corp. v. McCartney, 896 F.2d 1138 (8th Cir.1990), involved a non-coercive administrative proceeding. There, Alleghany applied to Nebraska's Director of Insurance for permission to purchase shares of stock in the parent company of a Nebraska insurance company. See id. at 1140. The Director denied the application pursuant to the Nebraska Insurance Holding Companies Act. Id. at 1141. Alleghany then sought to challenge the constitutionality of the Act in federal court. Id. The federal district court abstained, and the Eighth Circuit upheld that decision. In so doing, the Alleghany court inexplicably ignored the import of Patsy; indeed, nowhere in McCartney did the Eighth Circuit even mention Patsy, let alone distinguish it. Moreover, the Eighth Circuit’s McCartney decision conflicted with the Seventh Circuit’s conclusion, regarding the same federal plaintiff’s identical claims (albeit in Wisconsin and Indiana). See Haase, 896 F.2d at 1053.

. Huffman also discounted the federal plaintiff's concerns about exhausting state appellate remedies by noting that “where a final decision of a state court has sustained the validity of a state statute challenged on federal constitutional grounds, an appeal to this Court lies as a matter of right.” 420 U.S. at 605, 95 S.Ct. 1200 (citing 28 U.S.C. § 1257(2)). Of course, federal plaintiffs no longer have such a right to an appeal because § 1257 now provides the Supreme Court discretion to grant certiorari. See Supreme Court Case Selections Act, Pub.L. 100-352, 102 Stat. 662 (1988).

. Because we decide this case based on the first factor, we need not consider the final two Amanatullah factors, involving adequacy of the state forum and extent of the state interest. However, we note that the standard for the third factor has been eroded of late. That is, this court and others have abridged the third prong of the Younger inquiry, asking only whether the state interest is important, see Amanatullah, 187 F.3d at 1164-65, rather than asking whether the issue “involve[s] important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.” Id. at 1163 (quoting Taylor, 126 F.3d at 1297) (emphasis added).
The district court held that the “third requirement of Younger is met because important state interests are implicated in this case.” Specifically, the court noted the state's interest in "[pjrotecting the fiscal integrity of public assistance programs” and in "construing state statutes with regard to federal law challenges to those statutes.” However, the court did not mention the obvious federal interest in ensuring that Kansas does not enact and enforce laws that contravene the Medicaid federal-state covenant. Given that Congress created the Medicaid program as a cooperative federal-state endeavor, it would be peculiar to hold that a state's handling of Medicaid issues is a "matter[] which traditionally look[s] to state law for their resolution or implicate[s] separately articulated state policies.” See Amanatullah, 187 F.3d at 1163 (quotation omitted). Therefore, this third factor would necessitate a comprehensive analysis were we to reach it.