**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 22, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHASE CARMEN HUNTER,

     Plaintiff - Appellant,

v.

TOM HIRSIG, individually and in his
official capacity as Commissioner of
Insurance for Wyoming and as Director,
Executive Board of the National
Association of Insurance Commissioners;
WYOMING DEPARTMENT OF
INSURANCE;  COMMISSIONERS OF
THE NATIONAL ASSOCIATION OF
INSURANCE; NATIONAL INSURANCE
PRODUCER REGISTRY; ELEANOR
KITZMAN, individually and in her official
capacity as Commissioner of Insurance for
Texas; JULIA RATHGEBER, individually
and in her official capacity as
Commissioner of Insurance for Texas;
TEXAS DEPARTMENT OF
INSURANCE; DAVE JONES,
individually and in his official capacity as
Commissioner of Insurance for California;
CALIFORNIA DEPARTMENT OF
INSURANCE,

     Defendants - Appellees.

No. 15-8113
(D.C. No. 2:14-CV-00089-NDF)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding

(continued)

_____

Before **MATHESON**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

Chase Carmen Hunter brought this pro se action seeking to enjoin Wyoming

regulatory officials from revoking her license to sell insurance in the state.[1]  The

district court abstained under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny,

which prohibit federal courts from interfering with certain ongoing state proceedings.

The court dismissed the remainder of the suit for failure to state a claim.  We have

jurisdiction under 28 U.S.C. § 1291 and affirm the district court's judgment.

## I.  BACKGROUND

Ms. Hunter was licensed to sell insurance in 47 states, including Wyoming.  In

February 2014, Tom Hirsig, the Commissioner of the Wyoming Department of

Insurance (WDI), notified Ms. Hunter that her license was being revoked because her

licenses in Texas, Florida, and California had been revoked for misconduct.  The

WDI is the state agency charged with enforcing the Wyoming Insurance Code, *see*

Wyo. Stat. Ann. § 26-2-109(a)(iii).  Under its statutory authority, the WDI may

revoke an insurance producer's license whose license has been revoked in another

state, *id.* § 26-9-211(a)(ix).  Mr. Hirsig, who is also a member of the National

_____

precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We afford Ms. Hunter's pro se filings a liberal construction but do not act as
her advocate.  *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

Association of Insurance Commissioners (NAIC), learned of the revocations from a database maintained by an NAIC-affiliate, the National Insurance Producer Registry (NIPR).

After receiving the notice, Ms. Hunter filed this action in federal court on May 5, 2014, seeking to enjoin the state revocation proceedings. In her second amended complaint, she alleged the information provided on the NIPR database was inaccurate and the NAIC, the NIPR, Mr. Hirsig, and the other individually named defendants refused to correct it.[2] She alleged the revocations in Texas, Florida, and California resulted from crimes and fraud perpetrated against her, particularly a $10 million adverse judgment entered by a Florida court. She also averred that judges in Florida and Virginia had twice conspired to kidnap her to prevent her from seeking relief. Based on these allegations, Ms. Hunter sought declaratory and injunctive relief barring Mr. Hirsig and the WDI from revoking her license. She also asserted 18 claims for a host of violations, including mail and wire fraud, racketeering, and human rights abuses.[3]

Meanwhile, the WDI held a contested hearing on June 6, 2014. Ms. Hunter appeared by telephone, and the WDI took evidence from both parties. Shortly after the hearing, on June 19, Ms. Hunter moved the district court for a temporary

---

[2] The other individually named defendants are insurance regulators in Texas and California who were never served.

[3] The district court noted that Ms. Hunter has lodged numerous similar suits in jurisdictions throughout the country. R. at 559 n.1.

restraining order or preliminary injunctive relief, claiming Mr. Hirsig was taking "aggressive steps . . . to block" her from removing inaccurate information from the NIPR database. R. at 111. She requested that the court enjoin Mr. Hirsig and the WDI from pursuing the administrative revocation proceeding, which she asserted was damaging her "excellent reputation." *Id.* at 130. The district court denied her request, and Ms. Hunter appealed to this court.

While her interlocutory appeal was pending, the WDI revoked Ms. Hunter's license on August 8, 2014. In its final decision, the WDI concluded there was clear and convincing evidence that Ms. Hunter's licenses in Texas, Florida, and California had been revoked, warranting revocation of her Wyoming license as an "appropriate sanction under Wyo. Stat. Ann. § 26-9-211(a)(ix)." *Id.* at 305. Specifically, the WDI determined Ms. Hunter's Texas license had been revoked for her engaging "in actions designed to mislead the public as to the nature and terms of the insurance she was selling." *Id.* Similarly, the WDI determined her Florida "license was revoked for knowingly making untrue and materially false statements to customers regarding the true nature of the insurance products she was selling." *Id.* at 305-06. And in California, her "license was revoked for not disclosing the [disciplinary] actions in Florida and Texas as required . . . by California law." *Id.* at 306. The WDI stated that "[g]iven the seriousness and recurring pattern of [Ms. Hunter's] actions, revocation is necessary to protect Wyoming citizens." *Id.*

Ms. Hunter did not seek review in state court. *See* Wyo. Stat. Ann. § 16-3-114 (providing for judicial review of final adverse administrative decisions). Instead, she

moved in federal district court on August 19, 2014, to disqualify the district judge for denying injunctive relief. The district court dismissed the motion without prejudice, explaining that the court lacked jurisdiction because Ms. Hunter's appeal was still pending in this court. On June 23, 2015, a panel of this court affirmed the denial of injunctive relief. Ms. Hunter failed to renew her motion in district court to disqualify the judge.

On August 12, 2015, the NAIC moved to dismiss Ms. Hunter's federal suit based on *Younger*, or alternatively, for failure to state a claim. On October 20, 2015, the district court granted the NAIC's motion and dismissed the action, ruling that to the extent Ms. Hunter sought to enjoin the state revocation proceedings, *Younger* barred her claims. Otherwise, the court ruled, her complaint should be dismissed because (1) Mr. Hirsig enjoyed qualified immunity as to any claim against him in his individual capacity, (2) the Eleventh Amendment barred her claims against him in his official capacity, and (3) she failed to plead a viable cause of action for prospective injunctive relief.

Now on appeal, Ms. Hunter presents several poorly developed arguments, including one challenging the district court's dismissal pursuant to *Younger*. Because we affirm the dismissal under *Younger* and Ms. Hunter does not dispute the portion of the district court's decision dismissing her complaint, we deem her remaining arguments moot.

## II. DISCUSSION

### A. *Younger Abstention*

*Younger* and its progeny require federal courts to abstain from exercising jurisdiction if (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state proceeding provides an adequate forum to hear the plaintiff's federal claims, and (3) the state proceeding involves important state interests. *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). If these three conditions are met, *Younger* abstention is non-discretionary and must be invoked absent extraordinary circumstances. *Id.* "We review *de novo* the district court's decision to abstain pursuant to *Younger*." *Id.*

### 1. Ongoing State Administrative Proceedings

The first condition—ongoing state administrative proceedings—involves two subparts: the proceedings must be *ongoing* and they must be the *type* of proceedings afforded *Younger* deference. *See Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 (10th Cir. 2009).

#### a. *Ongoing*

The administrative proceedings were ongoing when Ms. Hunter filed her complaint, but by the time the district court dismissed the suit, the WDI had revoked her license. Moreover, the time for seeking judicial review in state court had run. *See* Wyo. Stat. Ann. § 16-3-114(a) (providing for judicial review of final administrative decisions pursuant to the rules of the Wyoming Supreme Court); Wyo. R. App. P. 12.04(a) (providing a thirty-day limit to petition for judicial review of

- 6 -

final administrative decisions).  Nevertheless, the district court determined that *Younger* still applied because Ms. Hunter failed to appeal the WDI's final adverse decision to the appropriate state court—effectively requiring that she exhaust her state judicial remedies.

Ordinarily, a state proceeding ends when the time for appeal has run.  *See Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006) ("[I]f a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended.").  The Supreme Court has recognized, however, that "regardless of when [a state court's] judgment became final, . . . a necessary concomitant of *Younger* is that a party in [the federal plaintiff's] posture must exhaust his state appellate remedies before seeking relief in the [federal] District Court . . . ." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975).  Although the Court has not squarely extended this exhaustion principle to preceding state administrative proceedings, it has assumed without deciding "that an administrative adjudication and the subsequent state court's review of it count as a 'unitary process' for *Younger* purposes." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 592 (10th Cir. 2013) (quoting *New Orleans Pub. Serv., Inc. v Council of City of New Orleans*, 491 U.S. 350, 369 (1989)).

The district court took this approach and abstained under *Younger* because Ms. Hunter failed to exhaust her state judicial remedies.  On appeal, Ms. Hunter advances no argument that challenges this rationale.  Instead, she contends that *Younger* does not apply to the NAIC as a non-government entity, asserting without

explanation that *Younger* does not apply to this case. *See* Aplt. Br. at 12 ("The Oct [sic] Order appears to dismiss the lawsuit based on the Younger Doctrine despite the fact that the NAIC is not a government administrative agency and the Younger Doctrine does not apply to it. The Younger Doctrine does not apply to the facts of this lawsuit.").[4] These statements, which constitute the sum total of her argument, tell us nothing about why the district court might have been wrong to impose an exhaustion requirement. *See Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision is wrong."). By failing to proffer any argument challenging the district court's rationale, Ms. Hunter has forfeited the issue. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").[5]

---

[4] We reject Ms. Hunter's assertion that *Younger* is inapplicable because the NAIC is a non-government entity. The dispositive factor is whether the litigation involves important state interests, not whether the litigants are private parties. *See Morrow v. Winslow*, 94 F.3d 1386, 1396-97 (10th Cir. 1996) (rejecting argument that abstention was inappropriate in private litigation involving an overriding state interest). As explained below, there is an obvious state interest in licensing and regulating insurance producers. And the WDI is the state agency charged with representing that interest and enforcing Wyoming's insurance code.

[5] Any jurisdictional implications of *Younger* do not alter our conclusion. Although we have sometimes characterized *Younger* as jurisdictional, *see, e.g., D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004) ("*Younger* abstention is jurisdictional."), "*Younger* neither provides a basis for nor destroys federal jurisdiction, but it does determine when the federal courts must refrain from exercising jurisdiction," *Chapman v. Barcus*, 372 F. App'x 899, 901 n.1 (10th Cir.

(continued)

- 8 -

b. *Type*

As for the *type* of proceeding, the Supreme Court has held that *Younger* applies to "particular state civil proceedings that are akin to criminal prosecutions." *Sprint Commc'ns*, 134 S. Ct. at 588 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975)).  The Court has described these matters as "civil enforcement proceedings," *id.* at 591 (internal quotation marks omitted), "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act," *id.* at 592; *see Brown*, 555 F.3d at 891 ("In these cases, the federal plaintiff [seeks] to thwart a state administrative proceeding initiated to punish the federal plaintiff for a bad act.").  A state entity typically initiates these proceedings, which usually entail an investigation and a formal complaint or charges.  *Sprint*, 134 S. Ct. at 592.  These proceedings, moreover, are mandatory and are "[themselves] the wrong which the federal plaintiff seeks to correct via injunctive relief." *Brown*, 555 F.3d at 891.

Here, Ms. Hunter's federal lawsuit sought injunctive relief to thwart the WDI's revocation proceedings.  Her licenses in three other states had been revoked for serious misconduct, prompting Wyoming regulatory officials to initiate reciprocal

2010) (brackets and internal quotation marks omitted).  And, as here, arguments in support of jurisdiction may be waived just like any other argument.  *See Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275-76 (10th Cir. 2011); *see also United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n.2 (10th Cir. 1996) ("Our duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction.").

revocation proceedings. The WDI held a contested hearing, received evidence and argument, and determined by clear and convincing evidence that the revocations in the other jurisdictions warranted revocation of her Wyoming insurance license as prescribed by state law, *see* Wyo. Stat. Ann. § 26-9-211(a)(ix). These were mandatory proceedings, not optional, and they "originated with the state's proactive enforcement of its laws." *Brown*, 555 F.3d at 892. These circumstances reflect "civil enforcement proceedings" entitled to *Younger* deference. *See Sprint*, 134 S. Ct. at 591-92; *see also Brown*, 555 F.3d at 891-92 (evaluating similar "state-initiated enforcement proceedings" subject to *Younger* abstention).[6]

The fact that the Wyoming proceedings were initiated as a reciprocal response to the revocations in Florida, Texas, and California does not change our analysis because the hallmarks of a civil enforcement proceeding remain—*viz.*, a state entity initiated the proceedings to sanction Ms. Hunter for her misconduct, the WDI took evidence at a contested hearing and concluded there were grounds warranting revocation, the proceedings were mandatory, and Ms. Hunter sought to enjoin the proceedings via her federal complaint. Indeed, we previously confronted similar reciprocal enforcement proceedings and concluded that *Younger* abstention was appropriate. *See Amanatullah*, 187 F.3d at 1162-63 (affirming application of *Younger* where Colorado Board of Medical Examiners instituted reciprocal civil

---

[6] In *Brown*, we described civil enforcement proceedings as "coercive" rather than "remedial," 555 F.3d at 890, but the Supreme Court has since questioned the efficacy of that dichotomy, "given the susceptibility of the designations to manipulation," *Sprint*, 134 S. Ct. at 593 n.6.

enforcement proceedings to revoke a physician's medical license based on a public reprimand by Nevada Board of Medical Examiners).

The first *Younger* condition is satisfied.

\*　　\*　　\*　　\*

2. **State Proceedings Adequate to Hear Federal Claims**

The second *Younger* condition is met because the administrative proceedings were judicial in nature and provided an adequate forum to hear Ms. Hunter's federal claims. The Wyoming Administrative Procedure Act governed the proceedings. Wyo. Stat. Ann. §§ 16-3-101 to -115, 26-9-211(a). The parties were afforded reasonable notice and an opportunity for a hearing, depositions and discovery, the right to submit evidence and argument, the right to engage in cross-examination, administrative record review, and a final written decision containing factual findings and legal conclusions. *See id.* §§ 16-3-107 to -110. Ms. Hunter also could have raised her federal claims on state-court review, but she declined that option. *See id.* § 16-3-114; *see also Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986) ("[I]t is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding.").

3. **Important State Interests**

The third condition is satisfied because the revocation proceedings concerned important state interests—the regulation and licensure of insurance producers. These matters traditionally fall under the state's regulatory authority. *See* Wyo. Stat. Ann. § 26-9-201 (prescribing "qualifications and procedures for the licensing of insurance

- 11 -

producers"); *Bell v. Gray*, 377 P.2d 924, 925 (Wyo. 1963) (recognizing that sale of insurance affects the public interest and is subject to state regulation).

Thus, the district court correctly abstained under *Younger*.

\* \* \* \*

B. *Remaining Arguments*

As for Ms. Hunter's remaining arguments, she argues the district court "did not apply the relevant law" and its dismissal "was entered without . . . conducting a hearing or collecting any evidence from the adverse parties." Aplt. Br. at 4. Without explication, she adds only that she "does not have time to expound on th[ese] issue[s] but the facts are shown in the record." *Id.* at 12. We need not search the record to ascertain the nature of these perfunctory statements, however, which are insufficient to preserve appellate review. *See Bronson*, 500 F.3d at 1104 ("Scattered statements in the appellant's brief are not enough to preserve an issue for appeal." (internal quotation marks omitted)).

Also, Ms. Hunter's appellate brief does not contest the district court's conclusion that her complaint failed to state a claim. Our procedural rules require that an opening brief contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). Although Ms. Hunter is proceeding pro se, we have "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted). By failing to challenge this

aspect of the district court's decision, Ms. Hunter has forfeited any associated issues. *See Bronson*, 500 F.3d at 1104 ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.").

Apart from these deficiencies, Ms. Hunter contends the district court erred by (1) refusing to disqualify herself after denying Ms. Hunter's request for preliminary injunctive relief, (2) failing to enter a scheduling order, (3) making factual errors in dismissing the motion for disqualification and denying preliminary injunctive relief, and (4) dismissing the complaint based solely on the NAIC's motion. Additionally, Ms. Hunter requests that we direct the district judge to disqualify herself. But these issues are all moot because they do not pertain to or otherwise affect our decision to affirm the district court's dismissal on *Younger* grounds and for failure to state a claim. *See Kaw Nation v. Springer*, 341 F.3d 1186, 1187 (10th Cir. 2003) (declining to address moot issue that had no impact on the outcome of the case); *Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 946 (10th Cir. 2001) (affirming dismissal of remaining federal claim, which "renders the recusal issue, with its request for prospective relief, moot").[7]

_____

   [7] We note the requests to disqualify the district court judge lack merit. As indicated above, Ms. Hunter sought to disqualify because the judge denied her request for preliminary injunctive relief. But adverse rulings are not an appropriate basis for seeking disqualification. *See Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997). Moreover, the district judge, when she dismissed the motion to disqualify, correctly explained that she lacked jurisdiction to rule on the motion during the pendency of Ms. Hunter's interlocutory appeal. *See McCauley v. Haliburton Energy Servs., Inc.*, 413 F.3d 1158, 1160 (10th Cir. 2005) (noting "general rule that filing an appeal divests the district court of its control over those

(continued)

### III. **CONCLUSION**

We affirm the district court's judgment.

                    ENTERED FOR THE COURT,


                    Scott M. Matheson, Jr.
                    Circuit Judge

---

aspects of the case involved in the appeal"). And in any event, because the district judge dismissed the motion to disqualify without prejudice, Ms. Hunter could have renewed her motion if she had a proper basis. She never did.